UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

NATASHA PORTEOUS,

                    Plaintiff(s),

    v.

CAPITAL ONE SERVICES II, LLC,

                    Defendant(s).

Case No. 2:17-CV-2866 JCM (GWF)

ORDER

Presently before the court is defendant Capital One Servs., II, LLC's motion to dismiss plaintiff's first amended collective and class action complaint. (ECF No. 12). Plaintiff Natasha Porteous filed a response (ECF No. 15), to which defendant replied (ECF No. 16).

Also before the court is plaintiff's motion for circulation of notice. (ECF No. 17). Defendant responded (ECF No. 28), to which plaintiff replied (ECF No. 39).

Also before the court is defendant's motion to strike declarations offered in support of plaintiff's motion for circulation of notice. (ECF No. 38). Plaintiff filed a response (ECF No. 40), to which defendant replied (ECF No. 41).

I. **Facts**

This is a collective and class action brought by plaintiff and on behalf of all similarly situated individuals. (ECF No. 6). Plaintiff was employed by defendant as a non-exempt, hourly, full-time, personal banker/customer service representative at defendant's Las Vegas call center location from November 30, 2015, until April 11, 2017. *Id.* at 3.

For each eight-hour shift, plaintiff was entitled to two fifteen-minute paid rest breaks and one thirty-minute unpaid lunch period. (ECF No. 6). Plaintiff alleges that, although she took her thirty-minute lunch daily, she was "rarely" able to take her two allotted fifteen-minute breaks. *Id.* at 3-4. According to plaintiff, she was not paid for the breaks she was unable to take despite

working during that time. *Id.* In addition, plaintiff claims that defendant did not include her "non-discretionary" monthly incentive payment—a form of compensation paid to call center employees for meeting defendant's production standards—when defendant calculated plaintiff's regular hourly rate of pay. *Id.* at 4. Plaintiff asserts that this omission meant that defendant failed to properly calculate her hourly wage, resulting in defendant's subsequent failure to properly calculate plaintiff's overtime pay. *Id.* at 4-5.

Plaintiff alleges that all call center employees, including plaintiff, were required to perform daily pre-shift activities and post-shift activities "off-the-clock," without compensation. *Id.* at 4. Plaintiff asserts that the FLSA class consists of all hourly paid call center employees for the "relevant" time period.[1] *Id.* at 5.

Plaintiff simultaneously asserts both federal and state claims. Plaintiff's federal claims implicate the Fair Labor Standards Act ("FLSA"). *Id.* Plaintiff makes similar allegations with respect to the Nevada class under Nevada's constitution and Nevada's Revised Statutes ("NRS"). *Id.* at 5-8. Like the FLSA class, plaintiff asserts that the Nevada class consists of all hourly paid call center employees employed in the state of Nevada during the "relevant" time period, as well as a Nevada sub-class consisting of "wages due and owing" to all members of the Nevada class that are former employees of defendant. *Id.* at 5. In total, plaintiff alleges that there are approximately 700 former and current call center employees who are class members, over 500 of whom are in the Nevada class. *Id.* at 6.

Plaintiff filed the original complaint in state court on October 5, 2017. (ECF No. 1). Defendant removed the action to federal court on November 15, 2017, based upon federal question jurisdiction. *Id.* On December 6, 2017, plaintiff filed a first amended complaint. (ECF No. 6). In the instant motion, defendant move to dismiss plaintiff's complaint for failure to state a claim pursuant to Rule 12(b)(6).

Plaintiff's first amended complaint alleges seven causes of action: (1) failure to pay overtime in violation of the FLSA, 29 U.S.C. § 207; (2) failure to pay the correct overtime rate in

---

[1] Rather than provide the court with the relevant time period, plaintiff asserts that the time period is a three-year statute of limitations based upon plaintiff's allegation that defendant's conduct was "willful."

violation of the FLSA, 29 U.S.C. § 207(e); (3) failure to compensate for all hours worked in violation of NRS 608.140 and 608.016; (4) failure to pay minimum wages in violation of the Nevada constitution; (5) failure to pay overtime in violation of NRS 608.140 and 608.018; (6) failure to timely pay all wages "due and owing" in violation of NRS 608.140 and 608.020-050; and (7) breach of contract. (ECF No. 6).

Plaintiff asserts these claims on behalf of herself and the following proposed classes: (i) FLSA class consisting of all hourly paid call center employees employed by defendant in the United States at any time during the relevant time period herein; (ii) Nevada class consisting of all hourly paid call center employees employed by defendant in the United States at any time during the relevant time period herein; and (iii) wages due and owing class consisting of all members of the Nevada class who are former employees of defendant. *Id.* at 5.

Defendant filed a motion to dismiss plaintiff's complaint on November 22, 2017. (ECF No. 12).

## II. Legal standard

When considering a Rule 12(b)(6) motion for failure to state a claim, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh,* 205 F.3d 1146, 1150, n.2 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the moving party. *Shwarz v. U.S.,* 234 F.3d 428, 435 (9th Cir. 2000). Generally, the court should only look to the contents of the complaint during its review of a 12(b)(6) motion to dismiss; however, the court may consider documents attached to the complaint or referred to in the complaint whose authenticity no party questions. *Id.; see also Durning v. First Bos. Corp.,* 815 F.2d 1265, 1267 (9th Cir. 1987).

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). The issue is whether a claimant is entitled to offer evidence to support the claims, not whether the claimant will ultimately prevail. *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997) (quotations omitted).

A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.* (quoting *Twombly,* 550 U.S. at 557).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *See Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

If the court grants a motion to dismiss a complaint, it must then decide whether to grant plaintiff leave to amend. *Lucatelli v. Texas De Brazil (Las Vegas) Corp.*, No. 2:11-CV-01829-RCJ, 2012 WL 1681394, at *2 (D. Nev., May 11, 2012). The court should "freely give" leave to amend where there is no "undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992).

### III. Discussion

Defendant moves to dismiss all seven of plaintiff's claims. Plaintiff's claims will be addressed in turn to determine whether dismissal is appropriate.

### A. The Fair Labor Standards Act

The Fair Labor Standards Act ("FLSA") was created to provide a uniform national policy of guaranteeing compensation for all work or employment covered by the Act.[2] *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 741 (1981). The FLSA sets minimum wage and overtime standards for employment. 29 U.S.C. § 201 *et seq.* Specifically, the FLSA requires employers to pay employees not less than $7.25 per hour (minimum wage). 29 U.S.C. § 206(a)(C). The FLSA also requires employers to pay employees who work in excess of forty hours per week "at a rate not less than one and one-half times" their normal wages (maximum hours). 29 U.S.C. § 207(a)(1).

---

[2] The parties' motions assume an employment relationship between plaintiff and defendant based upon plaintiff's employment at defendant's call center in Las Vegas. Accordingly, the court's analysis is based upon the same assumption.

The FLSA grants individual employees broad access to the courts and permits an action to recover minimum wages, overtime compensation, liquidated damages, or to gain injunctive relief. *Barrentine,* 450 U.S. at 740.

While the FLSA does not mandate paid break time, it allows for consideration of work during these periods in calculating potential failure to pay minimum wage or overtime. *Nelson v. Waste Mgmt. of Alameda City., Inc.*, 33 Fed. App'x 273, 274 (9th Cir. 2002) (holding that while FLSA does not require compensation for work during break times, it "requires that both hours worked and meal periods treated as hours worked be included in wage and overtime calculations").

However, plaintiff's claims do not "arise under or relate to" the FLSA unless they implicate the statute's overtime or minimum wage requirements. *See* 29 U.S.C. § 215(a)(3).

In order to bring a claim for failure to pay minimum wage in violation of 29 U.S.C. § 207 (maximum hours), plaintiff must first show that her hourly pay fell below the statutory minimum wage of $7.25 per hour worked. 29 U.S.C. § 206(a); *Sargent v. HG Staffing, LLC*, 171 F. Supp. 3d 1063, 1077 (D. Nev. 2016) (quoting *Adair v. City of Kirkland*, 185 F.3d 1055, 1063 (9th Cir. 1999) ("The district court properly rejected any minimum wage claim the officers might have brought by finding that their salary, when averaged across their total time worked, still payed them above minimum wage."); *Sullivan v. Riviera Holdings Corp.*, No. 2:14-cv-165-APG-VCF, 2014 WL 2960303, at *2 (dismissing FLSA claim because plaintiffs' allegations did not meet this standard). In other words, before plaintiff can bring FLSA minimum wage claims on behalf of herself and similarly situated employees, plaintiff must show that her compensation, when averaged across all hours worked, dropped her pay below the $7.25 statutory threshold. *Id.*

The FLSA's overtime compensation provision entitles covered employees to time-and-a-half wages for hours worked in excess of forty hours in a workweek. 29 U.S.C. § 207(a)(1). "Accordingly, to state a claim the plaintiff must allege that she worked more than 40 hours per workweek and did not receive the correct overtime pay for that week (or weeks)." *Sullivan*, 2014 WL 2960303, at *2. Here, plaintiff must show that she was not paid for all hours worked

in excess of forty hours in a work week before she can bring a claim of failure to pay overtime under the FLSA.

### a. Plaintiff's FLSA claims

Plaintiff was an hourly, full-time, personal banker/customer service representative at defendant's Las Vegas call center location from November 30, 2015, until April 11, 2017. (ECF No. 6 at 3).

Plaintiff generally alleges that defendant violated the FLSA because defendant failed to pay overtime to her and other hourly call center employees for working through their fifteen minute breaks and for performing pre- and post-shift work. (ECF Nos. 6, 15, 17, 19, 39, 40). Plaintiff also alleges that defendant violated the FLSA when defendant failed to consider her non-discretionary incentive bonuses when calculating her wages, ultimately resulting in defendant's failure to properly calculate plaintiff's and other call center employees' overtime pay. *Id.*

### i. *Defendant's alleged failure to pay overtime for pre- and post-shift activities in violation of the FLSA, 29 U.S.C. § 207*

Plaintiff alleges that defendant failed to pay her overtime for pre- and post-shift activities in violation of the FLSA. (ECF No. 6).

Defendant asserts that plaintiff's allegations are not sustainable. (ECF No. 12). Defendant contends that plaintiff is trying to bring a "gap time" claim under the guise of unpaid overtime in order to trigger the FLSA, but that the FLSA does not apply where "uncompensated work fails to trigger a minimum wage claim." *Id.* at 8. Defendant thus maintains that plaintiff's complaint fails to meet the pleading standard set forth in *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638 (9th Cir. 2014), *as amended* (Jan. 26, 2015). (ECF No. 16 at 4).

"[T]o survive a motion to dismiss, a plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." *Landers*, 771 F.3d at 644–45. However, a "plaintiff may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime

wages she believes she is owed, or any other facts that will permit the court to find plausibility." *Id.* at 645.

Nevertheless, even under *Landers,* "[e]ntitlement to relief requires more than labels and conclusions . . . Factual allegations must be enough to raise a right to relief above a speculative level." *Eclectic Prop. E., LLC v. Marcus & Millchap, Co*., 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Twombly,* 550 U.S. at 555) (where plaintiff's complaint did not contain adequate factual allegations to plausibly infer that defendants intended to defraud and, therefore, plaintiff could not show a plausible entitlement to relief).

"When considering plausibility, courts must also consider an 'obvious alternative explanation' for defendant's behavior." *Id.* (quoting *Twombly*, 550 U.S. at 567). It would be unfair to require defendant to be subjected to the expense of discovery and continued litigation where defendant's plausible alternative explanation is "so convincing that plaintiff's explanation is *implausible.*" *Id.* (emphasis in original); *In re Century Aluminum Co. Secs. Litig.,* 729 F.3d 1104, 1105 (9th Cir. 2013) (where plaintiff alleged facts that were "merely consistent with both their explanation and defendant's competing explanation," plaintiff could not show more than a possible entitlement to relief).

Plaintiff states that she was scheduled for nine-hour shifts, including eight hours of work, with an unpaid thirty minute lunch break and two unpaid fifteen-minute breaks per each 8:00am – 6:00pm shift. (ECF No. 6). Plaintiff alleges that she was required to perform pre-shift (ten minutes) and post-shift activities (twenty minutes), which amounted to approximately thirty minutes, every day worked, for which she was not compensated. *Id.*

According to plaintiff, these pre- and post-shift activities include logging into and out of her computer, reviewing daily memos, reviewing company emails, as well as reviewing program and script updates. *Id.* Plaintiff alleges that defendants failed to pay the FLSA class for all hours worked by failing to compensate for the time spent performing this weekly 2.5 hours of mandatory pre- and post-shift activities. *Id.*

Plaintiff identifies one workweek where she believes that she worked overtime: April 3, 2017, to April 9, 2017. (ECF No. 6 at 4). Plaintiff asserts that she is owed $68.93 in overtime

wages for this week. *Id.* This amounts to approximately thirty minutes of uncompensated work daily for pre- and post-shift activities. *Id.*

Notably, plaintiff's theory as to how defendant calculated and tracked hourly call center employees' time worked has shifted over time. In her first amended complaint, plaintiff simply alleges that defendant failed to compensate plaintiff and all members of the putative class for pre- and post-shift off-the-clock work activities because these activities occurred "before clocking-in and after clocking-out." (ECF No. 6 at 4).

Then, in plaintiff's motion for circulation of notice, plaintiff alleges that the pre- and post-shift activities occurred off-the-clock because defendant's ". . . timekeeping system had stopped recording hours for pay purposes" since employees were not "live" on the phone system when these activities transpired. (ECF No. 17 at 3-5). In addition, plaintiff alleges for the first time in her motion for circulation that defendant's "flawed interface between the computer bootup process and its automated timekeeping system . . . almost mechanically produces an under-reporting" of hours worked. *Id.* at 7. Plaintiff also alleges that defendant was aware of this off-the-clock work because defendant's "managers told the employees to do so." *Id.* at 6.

In response, defendant offers unequivocal evidence that hourly employees, including plaintiff and the putative class members, manually enter their time into defendant's web-based timekeeping system Workday. (ECF Nos. 28-38). In other words, defendant does not calculate employee wages based upon the time employees are logged into the phone system. *Id.* Although the company tracks the phone log to track employees' daily activities and time taking calls, the phone system does not function as a time clock, and it is not used for reporting time to payroll, nor is it used to determine how much an employee is paid. *Id.*

Rather, employees are responsible for manually entering all of their time worked into defendant's timekeeping system, including any overtime. *Id.* Further, employees and managers receive handbooks and attend annual training outlining the company's timekeeping policies and expectations. *Id.* The "Overview of Guidelines" is particularly instructive. (ECF No. 29-1 at 3-4). Employees are informed that:

> All time worked will be paid. Associates cannot be allowed to work during unpaid breaks . . . In order to be paid, associates must enter all time worked in Workday

**James C. Mahan**
**U.S. District Judge**

Time Tracking [sic], the official time tracking system of record . . . Start and stop times should reflect when associates actually begin and end work, not the hours they are scheduled to work . . . associates should enter their time daily . . . Managers should only adjust associate's Workday Time Tracking entries if the timecard does not reflect the hours the associate actually worked . . . Managers cannot withhold overtime from associates, even if they worked overtime without permission.

*Id.*

The company handbook then gives employees examples of how to accurately record their time into defendant's timekeeping system, including an "after hours" scenario where employees are instructed that any time spent logging into their computers and reading emails to prepare for the day should be entered into defendant's timekeeping system as time worked. *Id.* at 6.

With respect to plaintiff's claim that a company manager told supervisors to perform pre- and post-shift duties off the clock, defendant asserts that there is no factual support for the conclusion that the company was aware of and permitted its call center employees to perform off-the-clock work without pay on a widespread basis. (ECF Nos. 28-38). Defendant contends that plaintiff's claim that managers told employees to work off-the-clock directly contradicts all of defendant's policies, procedures and training. *Id.*

Additionally, defendant asserts that neither plaintiff, nor any other call center employee, made any complaints to the company regarding off-the-clock work, or that employees were not properly compensated for pre- or post-shift activities. *Id.* Defendant also emphasizes that it has a policy prohibiting managers from working employees "off-the-clock," and the company trains its managers that time worked before and after scheduled hours must also be reported. *Id.*

Further undermining plaintiff's claims, defendant also states that the company has a policy whereby hourly call center employees have paid "prep time" after the start of their scheduled shift in order to log into their computers and perform other necessary work-related tasks prior to taking phone calls. (ECF No. 28 at 6). The amount of prep time employees are permitted varies depending on an employee's position. *Id.*

Plaintiff worked in two positions in the company: risk coordinator in the customer resiliency department and senior coordinator in executive resolutions. *Id.* According to defendant's policies and procedures, risk coordinators are permitted ten minutes of paid prep time and senior coordinators are permitted fifteen minutes of paid prep time. *Id.* Paid prep time

is utilized when employees log into and out of their computers, review daily memos, review company emails, as well as review program and script updates. *Id.*

To support its position, defendant submitted a report comparing plaintiff's badge swipe at the front door with plaintiff's self-reported time worked. (ECF Nos. 28, 29-5). Notably, out of 232 days of plaintiff's employment, there were 81 occasions where plaintiff manually entered a start time prior to the time that she swiped her badge at the front door to gain entry at the building. *Id.* In other words, plaintiff self-reported that she began working before she even entered the building for 35% of the shifts that she worked.[3] *Id.*

In addition, on 101 days, plaintiff's self-reported start time was less than five minutes after she swiped her badge at the front door, and on 32 other occasions, plaintiff's self-reported start time was less than ten minutes after she swiped her badge at the front door. *Id.* In total, out of 232 shifts that plaintiff worked at defendant's call center, plaintiff either fabricated a start time prior to arriving at work or completed her pre-shift activities well within the applicable paid prep period on 214 occasions. *Id.*

Notably, plaintiff never denies that plaintiff and members of the putative class were responsible for manually recording their time worked into defendant's timekeeping system. (ECF Nos. 6, 15, 17, 19, 39, 40). Nor does plaintiff respond to defendant's claim that plaintiff did not make any complaints regarding defendant's pay practices prior to the instant matter.[4] *Id.* Indeed, nothing before the court supports plaintiff's argument that defendant's timekeeping software resulted in, or contributed to, a violation of the FLSA. (ECF Nos. 6, 15, 17, 19, 39, 40).

There is a significant difference between plaintiff's allegation that the company was using an automated timekeeping system that, by its nature, failed to accurately record their

---

[3] Pursuant to Capital One's policies, failure to enter all time worked in defendant's timekeeping system is "grounds for disciplinary action, including termination . . . Start and stop times should reflect when associates actually begin and end work . . ." (ECF No. 29-1 at 3). Further, employees must utilize their paid time off for unplanned absences, such as tardiness, and absenteeism trends are subject to disciplinary action, up to, and including, termination of employment. (ECF No. 30-1 at 2-4). Had defendant been aware of plaintiff's repeated tardiness and her failure to accurately record her time worked, her employment would have been subject to termination on this basis alone, notwithstanding the issue for which her employment was actually terminated, i.e., "call avoidance." *Id.*

[4] The declarations of Elliott, Emetanjo, and Squires are similarly bereft of any statements regarding manual entry of time worked or complaints to defendant regarding defendant's pay practices. (ECF Nos. 19, 19-1 through 19-4)

James C. Mahan
U.S. District Judge

employees' actual time worked and a timekeeping system where employees are responsible for manually recording all their time worked, including any overtime. Plaintiff's initial failure to accurately set forth the company's timekeeping and payment procedures undermines the validity of her off-the-clock allegations.

As defined in 29 U.S.C. § 203(g), "'[e]mploy' includes to suffer or permit to work." "[T]he words 'suffer' and 'permit' as used in the statute mean 'with the knowledge of the employer.'" *Fox v. Summit King Mines*, 143 F.2d 926 (9th Cir. 1944). Thus an employer who knows or should have known that an employee is or was working overtime must comply with the provisions of § 207. *Id.* An employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation. *Id.*

However, where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207. *Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) (*see also Small v. Univ. Med. Ctr. of S. Nev.*, No. 2:13-cv-00298-APG-PAL, 2017 WL 3043454 (D. Nev., *signed* Aug. 10, 2017).

Neither plaintiff, nor any other employee, made any complaints regarding defendant's timekeeping policies, including any complaints to the company regarding uncompensated pre- or post-shift activities. Accordingly, defendant did not know and had no way of knowing that plaintiff, or any other putative class members, were working off-the-clock without compensation. As a result, defendant had no opportunity to cure or address plaintiff's concerns prior to the instant matter.

Nonetheless, plaintiff was informed of defendant's policies and procedures regarding entering all of her time worked into defendant's timekeeping system, Workday, including any pre- or post-shift activities. (ECF Nos. 12, 16, 28-38, 41). However, based upon the evidence before the court, it appears that plaintiff deliberately prevented defendant from acquiring knowledge of her pre- and post-shift off-the-clock activities by failing to enter overtime into

Workday and then failing to report that she had not been properly compensated until she filed her complaint. *Id.;* (ECF Nos. 6, 15, 17, 19, 39, 40).

Under the totality of circumstances, defendant did not violate § 207 of the FLSA by failing to compensate plaintiff for pre- and post-shift activities. *Forrester,* 646 F.2d at 414. Accordingly, defendant's motion to dismiss is granted with respect to this claim.

### ii. *Defendant's alleged failure to pay overtime for missed breaks in violation of the FLSA, 29 U.S.C. § 207*

Plaintiff asserts that the members of the FLSA class are entitled to compensation for all hours actually worked. (ECF No. 6). Plaintiff alleges that defendant failed to pay the FLSA class for all hours worked by failing to compensate her and all other call center employees for working through their fifteen minute breaks. *Id.*

Specifically, plaintiff alleges that, although she took a thirty-minute lunch daily, she was "rarely" able to take her two allotted fifteen-minute breaks due to defendant's workplace policies and procedures, including, but not limited to, defendant's requirement that employees meet minimum "in call times" for each shift while also reading daily program updates, memos, and other employment related news/instructions on how to serve defendant's customers. (ECF Nos. 6, 15, 17, and 19-3). According to plaintiff, she was not paid for the breaks she was unable to take despite performing these work duties during that time. *Id.*

Defendant argues that plaintiff's claims under the FLSA are "critically flawed" and should be dismissed. (ECF No. 12 at 3). In particular, defendant contends that the company appropriately pays employees overtime when employees report that they work overtime, including any instance where employees are required to work through either of their fifteen minute breaks. (ECF Nos. 12, 16, 28-38, 41).

At a minimum, a plaintiff asserting a violation of the FLSA overtime provisions must allege that she worked more than forty hours in a given workweek without being compensated for the hours worked in excess of forty during that week. *Landers*, 771 F.3d at 645; *Pruell v. Caritas Christi, et al.,* 678 F.3d 10, 13-15 (1st Cir. 2012); *see also Lundy v. Cath. Health Sys. of*

*Long Island, Inc.,* 711 F.3d 106, 114 (2d Cir. 2013); *Davis v. Abington Mem'l Hosp.,* 765 F.3d 236, 242–43 (3d Cir. 2014).

Applying that standard to the pleadings in this case, plaintiff fails to state a claim for overtime wages with respect to missed breaks.  (ECF Nos. 6, 15, 17, 19, 39, 40).  Although plaintiff identifies one week— April 3, 2017, to April 9, 2017—where she does not believe that she was properly compensated for all hours worked, plaintiff admits that her calculation does not include any missed breaks.[5]  (ECF No. 6 at 4).  Nowhere else does plaintiff provide any further details of any alleged missed break for which plaintiff was not properly compensated, nor does plaintiff ever demonstrate how defendant allegedly failed to calculate a missed break.  (ECF Nos. 6, 15, 17, 19, 39, 40).

Furthermore, plaintiff did not respond to defendant's showing that defendant pays employees properly for overtime.  *Id.*  In other words, nothing in the record supports plaintiff's allegation that defendant fails to properly pay employees the appropriate amount of overtime for missed breaks.  *Id.*  Accordingly, defendant's motion to dismiss will be granted as to this claim. *See DeSoto,* 957 F.2d at 658.

### iii.  *Defendant's alleged failure to properly calculate non-discretionary incentive pay in violation of the FLSA, 29 U.S.C. § 207(e)*

Plaintiff claims that defendant did not include her non-discretionary monthly incentive payment when defendant calculated plaintiff's regular hourly rate of pay.  (ECF Nos. 6, 15, 17, 19, 39, 40).  Plaintiff asserts that this omission shows that defendant failed to properly calculate her hourly wage, resulting in defendant's subsequent failure to properly calculate plaintiff's overtime pay.  *Id.*  However, plaintiff's sole evidence regarding her claim is a speculative and conclusory statement that she "does not believe this incentive payment was included in [p]laintiff's regular rate of pay when calculating plaintiff's overtime compensation."  (ECF No. 15 at 6).

---

[5]  The declarations of Elliott, Emetanjo, and Squires are similarly bereft of any allegations regarding defendant's failure to pay overtime for missed breaks.  (ECF Nos. 19, 19-1 through 19-4).

Plaintiff worked in two positions in the company: risk coordinator in the customer resiliency department and senior coordinator in executive resolutions. *Id.* According to defendant, during her tenure as a risk coordinator from November 2014 through November 2016, plaintiff was entitled to a monthly incentive bonus.[6] (ECF No. 28 at 5-6). Defendant states that the monthly bonus that plaintiff received was allocated over the work weeks in the month it was earned and paid to plaintiff in the second paycheck of the following month. *Id.* at 6.

However, defendant submitted one of plaintiff's paystubs showing that plaintiff received a monthly incentive bonus and overtime, as well as her regular pay, during the pay period. (ECF No. 29-4). This belies plaintiff's allegations that defendant did not properly compensate her with respect to her monthly incentive bonus. *Id.*

According to defendant, plaintiff transferred to a senior coordinator position, effective February 2017.[7] *Id.* Defendant states that senior coordinators were entitled to an annual bonus based upon merit and performance reviews.[8] *Id.* However, plaintiff was only in the senior coordinator position for two months before her employment was terminated for "call avoidance."[9] *Id.* Defendant contends that plaintiff was not entitled to an annual bonus as a senior coordinator because plaintiff did not complete a year of employment in the position. *Id.*

With respect to plaintiff's allegation that supervisors adjusted her time to prevent overtime, defendant states that company policy prohibits supervisors from altering an employee's time except in instances where the work code needs to be changed or at an employee's request when an employee has entered their time incorrectly. (ECF No. 32 at 5; ECF No. 33 at 5). However, in no instance is a supervisor permitted to adjust an employee's time in order to delete time worked or overtime. *Id.*

---

[6] Defendant states that monthly incentive bonuses were discontinued as of September 2017. (ECF No. 28 at 6).

[7] Between November 2016 and February 2017, plaintiff went on maternity leave and was in training for the Senior Coordinator position. (ECF No. 32.).

[8] Defendant states that annual bonuses were phased out as of December 2017. (ECF No. 28 at 6).

[9] In defendant's 2017 associate expectations handbook, call avoidance encompasses unacceptable behavior, including, but not limited to, disconnecting or hanging up on customers, intentionally staying on the line after the call has been completed, avoiding taking calls made by dialer, and dialing out to avoid incoming calls. (ECF No. 30-3).

Again, plaintiff identifies only one week— April 3, 2017, to April 9, 2017—where she does not believe that she was properly compensated for all hours worked. (ECF No. 6 at 4). However, like plaintiff's claims regarding missed breaks, plaintiff admits that her calculation does not include any non-discretionary incentive payments. (ECF No. 6 at 4). Nowhere else does plaintiff provide any further details of any alleged incentive payment for which plaintiff was not properly compensated, nor does plaintiff ever demonstrate how defendant allegedly failed to properly calculate an incentive payment. (ECF Nos. 6, 15, 17, 19, 39, 40).[10]

Even viewing the facts in the light most favorable to plaintiff, there is simply no showing that defendant altered plaintiff's time worked in defendant's timekeeping system, or that defendant failed to properly calculate plaintiff's incentive pay. (ECF Nos. 6, 15, 17, 19, 39, 40). At best, plaintiff has merely established a "possible" entitlement to relief, which cannot support further proceedings. *Eclectic,* 751 F.3d at 996-97.

However, even if plaintiff had met her burden under *Twombly,* plaintiff's claims still would not survive because plaintiff was responsible for entering all of her time worked into defendant's timekeeping system. More specifically, plaintiff knew she had an affirmative duty to enter all time worked, including overtime, into defendant's timekeeping system and plaintiff never once reported to defendant that she had been improperly compensated for any reason. (ECF Nos. 6, 15, 17, 19, 39, 40). Defendant had no way of knowing plaintiff, or any other employee, had not been properly compensated unless it is notified by the employee. Accordingly, defendant could not violate the FLSA because defendant did not know, and could not have known, that plaintiff believed her incentive pay was not calculated correctly. *Forrester,* 646 F.2d at 414.

The court will grant defendant's motion to dismiss as to this claim.

### *iv.* *Conclusion*

In light of the foregoing, plaintiff has failed to sufficiently state a basis for an FLSA overtime claim for off-the-clock pre- and post-shift activities, working through breaks without

---

[10]  Once again, the declarations of Elliott, Emetanjo, and Squires are bereft of any allegations regarding defendant's failure to properly calculate incentive pay with their wages. (ECF Nos. 19, 19-1 through 19-4).

compensation, and failure to calculate incentive pay in plaintiff's wages. Defendant's motion to dismiss will therefore be granted as to plaintiff's FLSA claims.

### B. Conditional certification of class

Plaintiff moves the court to certify her FLSA claims as a collective action and to exercise the court's discretion under 29 U.S.C. § 216(b) to authorize and facilitate notice to potential class members. (ECF No. 17). *See Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 169 (1989). Given the court's ruling on plaintiff's FLSA claims, however, plaintiff's motion will be denied as moot.

Plaintiff's motion to circulate also urges the court to infer a three-year statute of limitations. However, given that court's dismissal of plaintiff's FLSA claims on the merits, determining the applicable statute of limitations, and whether to certify a conditional class or engage in tolling, is immaterial. As plaintiff's underlying claims have been dismissed, plaintiff's allegations regarding conditional certification of class, the appropriate statute of limitations for wage and hour claims, and equitable tolling, are dismissed as moot.

### C. State law claims

Plaintiff's four remaining causes of action are with respect to the NRS and the Nevada Constitution.

#### a. Plaintiff's claims under Nevada state law and the Nevada constitution

Plaintiff alleges the following state law claims: (i) defendant violated NRS 608.140 and NRS 608.016 by failing to pay wages to plaintiff and putative class members for all hours worked (third cause of action); (ii) defendant violated the Nevada Constitution for failing to compensate plaintiff and all members of the putative class for the time spent engaging in pre- and post-shift activities (fourth cause of action); (iii) defendant violated NRS 608.018(1) and NRS 608.018(2) by failing to pay plaintiff and putative class members daily and weekly overtime for time spent engaging in pre- and post-shift activities (fifth cause of action); and (iv) defendant violated NRS 608.020-.050 by failing to pay plaintiff all wages due and owed to plaintiff within three days of terminating plaintiff's employment (sixth cause of action). (ECF No. 6).

Finally, plaintiff asserts that for all of the NRS causes of action—third, fifth and sixth causes of action—there exists a private right of action within the statute.

Defendant contends that plaintiff's claims should be dismissed because, generally, there is no private right of action under NRS Chapter 608. (ECF Nos. 12, 28, 38, 41; ECF No. 16 at 7).

### i. Plaintiff's third and fifth causes of action

Generally, NRS § 608.016, NRS § 608.018, and NRS § 608.140 do not grant plaintiff a private right of action. This court has ruled on multiple occasions that no private right of action exists with regards to enforcing NRS §§ 608.010, et. seq. and 608.020, et. seq. *E.g., McDonagh v. Harrah's Las Vegas, Inc.*, No. 2:13-CV-1744-JCM-CWH, 2014 WL 2742874, at *3 (D. Nev. June 17, 2014); *Dannenbring v. Wynn Las Vegas, LLC*, 907 F. Supp. 2d 1214, 1218 (D. Nev. 2013) (concluding "that there is no private right of action under NRS § 608.018.").

Plaintiff asserts that NRS § 608.140—assessment of attorney's fees in action for recovery of wages—implies the Nevada Legislature's intent to allow a private action because the statute is silent on the applicable statute of limitations.

Despite plaintiff's assertion, this court has held that "[i]t is settled law that NRS § 608.140 'does not imply a private remedy to enforce labor statutes, which impose external standards for wages and hours,' but only provides private rights of action for *contractual claims*." *Gamble v. Boyd Gaming Corp.*, No. 2:13-CV-1009-JCM-PAL, 2014 WL 2573899, at *4 (D. Nev. June 6, 2014) (citing *Descutner v. Newmont USA Ltd.*, 3:12–cv–00371–RCJ–VPC, 2012 WL 5387703, *2 (D. Nev. 2012)) (emphasis added).[11]

Other courts in this district have thoroughly explained the rationales for this conclusion. *E.g., Descutner*, 2012 WL 5387703, at *3; *Ohlinger v. Marsh, USA, Inc.,* No. 2:16-cv-02588-JAD-CWH, 2017 WL 1181579, at *1 (D. Nev., Mar. 29, 2017) (". . . NRS 608.140 does not

---

[11]  To the extent that plaintiff's allegations regarding a private right of action under NRS 608 are predicated on her breach of employment contract claim, defendant contests that plaintiff had an employment contract. (ECF Nos. 12, 28, 38, 41). Defendant is correct that plaintiff was an at-will employee and, as a result, there is no employment contract between defendant and plaintiff. *Id.* Plaintiff makes no allegations regarding a contractual claim other than those associated with her breach of employment contract claim, which is discussed in greater detail below. (ECF Nos. 6, 15, 17, 19, 39, 40).

James C. Mahan
U.S. District Judge

create a vehicle for privately enforcing the legal rights conferred by the other provisions of Chapter 608; it merely establishes a fee-shifting mechanism in an employee's "suit for wages earned and due according to the terms of his or her employment.").

As no private right of action exists under NRS § 608.016, 608.018, or 608.140, defendant's motion to dismiss will be granted with prejudice as to plaintiff's NRS § 608.016, 608.018, and 608.140 claims.

### ii. *Plaintiff's sixth cause of action*

Plaintiff's sixth cause of action, brought under NRS § 608.020-050, does provide an explicit private right of action. If an employer pays an employee wages below the minimum wage set by the labor commissioner, NRS § 608.260 allows for that employee to "bring a civil action to recover the difference between the amount paid to the employee and the amount of the minimum wage."

Courts in this district have recognized that this private right of action exists. *E.g., Lucas v. Bell Trans*, No. 2:08-CV-01792-RCJ-RJ, 2009 WL 2424557, at *5 (D. Nev. June 24, 2009) ("NRS 608.260 recognizes a private right of action by the employee against his or her employer to recover the difference between the amount paid to the employee and the amount of the minimum wage."); *In re Wal-Mart Wage & Hour Emp' Practices Litig.*, 490 F. Supp. 2d 1091, 1125 (D. Nev. 2007).

While the court acknowledges this private right of action, plaintiff has failed to satisfy the pleading standard. *Id.* Plaintiff does not offer any additional facts or evidence in support of her NRS claims than she did in support of her FLSA claims. *Id.* Instead, she merely alleges that defendant did not pay plaintiff within three days of her termination of employment for "all hours worked in violation of state and federal law, at the correct legal rate." (ECF No. 6 at 10). Just as the court dismissed plaintiff's FLSA claims for failing to meet the pleading standard, the court will do the same with regards to plaintiff's claims under NRS § 608.020-050.

### iii. *Plaintiff's claim under the constitution of the state of Nevada*

The Minimum Wage Amendment ("MWA") guarantees employees payment of a specified minimum wage and gives an employee whose employer violates the MWA the right to

"bring an action against his or her employer in the courts of this State . . . to remedy any violation." Nev. Const. art. 15, § 16(B).

The MWA guarantees two tiers of minimum wages and permits an employer to pay the lower-tier wage if the employer provides qualifying health benefits. Nev. Const. art. 15, § 16(A). As relevant here, the minimum wage in 2015–2017 for employers providing health benefits to their employees was $10.875 per hour, while employers not providing health benefits had to pay $12.375 per hour.

The MWA establishes a base minimum wage, explains how adjustments to the base minimum wage are to be calculated, and specifies that the right to a minimum wage cannot be waived contractually, except in a bona fide collective bargaining agreement. Nev. Const. art. 15, § 16. Paragraph B of the MWA establishes the right of employees to sue their employer if the employer does not pay the constitutionally guaranteed wage:

An employee claiming violation of this section may bring an action against his or her employer in the courts of this State to enforce the provisions of this section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of this section, including but not limited to back pay, damages, reinstatement or injunctive relief. *Id.*

Thus, an aggrieved employee may bring a private action under Section 16 for back pay, damages, reinstatement, injunctive relief, and other legal and equitable remedies and may be awarded reasonable attorney's fees and costs if successful. *See Id.* § 16(B).

Plaintiff's sole allegation under the Nevada constitution simply alleges that defendant failed to pay her for every hour worked because defendant did not compensate her for pre- and post-shift duties in compliance with Section 16 of the Nevada Constitution.[12] (*See* ECF Nos. 6, 15, 17, 19, 39, 40). As with plaintiff's federal minimum wage claims, plaintiff does not demonstrate that she was ever paid at a rate below the state minimum wage. *Id.* And contrary to

---

[12] NRS § 608.260 states that an employee may bring a civil action to recover the difference between the amount paid to the employee and the amount of the minimum wage he or she was entitled to be paid. Article 15, Section 16.A. of the Nevada Constitution establishes the minimum wage in Nevada.

1    her assertion that she was not paid the minimum wage, plaintiff admits that she was paid $18.38

2    per hour (ECF No. 6 at 3), which is a wage not less than the higher tier of $12.375 under Section

3    16 (Nev. Const. art. 15, § 16(A).

4         Even if the court accepts plaintiff's allegations regarding minimum wage as true, and in

5    the light most favorable to plaintiff, plaintiff cannot demonstrate that her wages fell below the

6    requirements of Section 16 of Nevada's constitution.  Nev. Const. art. 15, § 16(A); (ECF Nos. 6,

7    15, 17, 19, 39, 40).  Accordingly, defendant's motion to dismiss will be granted as to this claim.

8         **D.  Defendant's alleged breach of contract**

9         Plaintiff asserts that even though plaintiff and putative class members were at-will

10   employees generally subject to termination at any time for any reason, the fact that defendant

11   "had an agreement . . . to pay an agreed upon hourly wage rate for all hours [ ] worked for

12   [d]efendant" means that defendant and plaintiff entered into a "written agreement" of

13   employment.  (ECF No. 6 at 14-15).

14        Plaintiff alleges that defendant breached this employment agreement when defendant

15   failed to compensate plaintiff and putative class members for all hours worked, primarily with

16   respect to off-the-clock pre- and post-shift activities.  *Id.*

17        Under Nevada law, at-will employment is presumed and the employment relationship

18   "can be terminated without liability by either the employer or the employee at any time and for

19   any reason or no reason." *Martin v. Sears, Roebuck & Co.,* 111 Nev. 923, 899 P.2d 551, 553–55

20   (1995).  Moreover, "a claim arising from breach of contract has no application to at-will

21   employment" and, if a plaintiff fails to show that her employment was anything other than at-

22   will, then "a breach of contract cause of action will not lie." *Id.* at 554.

23        An at-will relationship, however, can morph into a continued employment contract when

24   the employer and employee expressly or impliedly agree that employment is to be for an

25   indefinite term or that it may be terminated only for cause or "in accordance with established

26   policies or procedures." *D'Angelo v. Gardner,* 107 Nev. 704, 819 P.2d 206, 211 (1991).

27        Specifically, "an employer's issuance of an employee handbook containing termination

28   provisions of which the employee is aware may support an inference that the handbook's

termination provisions are part of the employment contract." *Minshew v. Donley,* 911 F.Supp.2d 1043, 1058 (D. Nev., Dec. 4, 2012) (citing *D'Angelo,* 819 P.2d at 209).

An employer can avoid creating an implied contract when using an employee handbook by including appropriately worded disclaimers in the handbook expressing that the policies contained therein do not affect the employer's right to discharge or terminate the employee at any time. *Sw. Gas Corp. v. Vargas,* 111 Nev. 1064, 901 P.2d 693, 697 (1995) (quoting *D'Angelo,* 819 P.2d at 209 n. 4). Consequently, if a plaintiff wishes to establish that her employment was not at-will by relying on the policies and procedures contained in an employee handbook, the plaintiff must demonstrate that the handbook proffers the policies and procedures without an effective disclaimer. *Id.*

Here, plaintiff merely claims that defendant breached a written employment agreement by failing to compensate plaintiff and putative class members for the time plaintiff and putative class members spent performing off-the-clock work. (ECF Nos. 6, 15, 17, 19, 39, 40).

However, even if plaintiff were to provide additional facts about the contract that defendant allegedly breached, plaintiff still could not sustain a breach of contract claim because plaintiff's utter reliance on defendant's obligation to pay wages for work performed does not rebut the at-will nature of her employment relationship or establish the existence of an employment contract. *Martin v. Sears,* 899 P.2d at 555 (stating that "breach of contract and bad faith discharge are not applicable to at-will employment").

In addition, defendant provided employee handbooks from 2015, 2016, and 2017, each of which contains a disclaimer that employees "understand and agree that this Associate Expectations document does not constitute an employment contract and that my employment with Capital One is at-will," which belies plaintiff's claim of an employment contract. *Sw. Gas Corp.,* 901 P.2d at 697; (ECF Nos. 30-1 at 17, 30-2 at 18, 30-3 at 21).

Because plaintiff fails to show that her employment was anything but at-will, defendant's motion to dismiss is granted with respect to plaintiff's breach of contract claim. *Martin v. Sears,* 899 P.2d at 553-54) (where, if a plaintiff fails to show that his employment was anything other than at-will, then "a breach of contract cause of action will not lie").

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion to dismiss plaintiff's amended collective and class action complaint (ECF No. 12) be, and the same hereby is, GRANTED consistent with the foregoing.

IT IS FURTHER ORDERED that plaintiff's motion for notice of circulation (ECF No. 17) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that defendant's motion to strike the declarations of Ayesha Elliott, Chidi Emetanjo, Cole Squires, and Natasha Porteous (ECF No. 38) be, and the same hereby is, DENIED as moot.

The clerk is instructed to enter judgment accordingly and close the case.

DATED July 17, 2018.

_____
UNITED STATES DISTRICT JUDGE